**HARRIS AUTOMATIC PRESS CO. v. HALL PRINTING PRESS CO.**

(Circuit Court of Appeals, Second Circuit. February 27, 1922.)

No. 187.

Patents ⬡328—1,112,609, for press-feeding mechanism, held valid, but not infringed.

The Harris patent, No. 1,112,609, for a sheet feed or separator, *held* valid, but not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Harris Automatic Press Company against the Hall Printing Press Company. Decree for complainant, and defendant appeals. Reversed.

For the purposes of this opinion, it is sufficient to set forth claims 6 and 11, which are as follows:

"6. In a sheet feed or separator, in combination, means for buckling one or a plurality of sheets at the top of a pile of stock, means for engaging and firmly holding the stock at a point near the engagement of the buckling means with the stock, such holding means preventing any portion of the stock from moving save the buckled portion, a separator located intermediate the buckling means and the holding means and designed to be lowered into contact with the buckled portion of the stock while the buckling and holding means are in engagement therewith, and means for raising such buckling means, holding means and separator from engagement with the stock, the buckling means being disengaged therefrom before the suction separator or holding means is raised to allow any buckled portion of the stock other than the topmost sheet to resume its previous position on the pile."

"11. In a sheet feed or separator, in combination, rotary combing bucklers for buckling one or a plurality of sheets at the top of a pile of stock, such bucklers being designed to engage the pile in proximity to two edges thereof and operable in a fixed plane when in engagement with the pile, presser feet for bearing on and holding the stock at points near the points of engagement of the bucklers, such presser feet preventing any portion of the stock from moving save the buckled portion, separators located intermediate the bucklers and the presser feet and designed to be lowered into contact with the buckled portion of the stock while the bucklers and presser feet are in engagement therewith, such separators being constructed and arranged to engage the buckled portion of the stock and crowd it laterally to increase the separation, at the crest of the buckled portion, between the pile and the topmost sheet, and means for raising such bucklers, feet and separators from engagement with the stock, the bucklers being disengaged therefrom before the separators or feet are raised to allow any buckled portion of the stock other than the topmost sheet to resume its previous position on the pile."

Gifford & Bull, of New York City (George F. Scull, of New York City, of counsel), for appellant.

Philip C. Peck, of New York City, for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). The patent is in the printing press art and the particular subject-matter relates to automatic paper-feeding mechanism used principally in lithographic presses. "The primary object of this invention," Harris stated in the specification, "is to provide a sheet feed or separator which will be capable of being operated at a high rate of speed, and which will, with equal facility, handle stock of varying degrees of thickness." Prior to Harris, there were automatic feeders in operation at speeds high as compared with hand feeding, and the automatic feeder was, of course, only a part of the lithograph printing press. It is therefore important to ascertain, at the outset, what the art was at the Harris date.

Paper sheet feeding to printing presses or folders from a pile of cut sheets has been and still is done by hand. Where, however, very large numbers of sheets were to be printed, it was appreciated that some automatic method of feeding the sheets would be commercially more economical and effective, because, obviously, in a given time more sheets

could be fed automatically than by hand. The art developed along two general lines; i. e., front edge and rear edge feeders. These were so called because in the front edge feeder the separating and feeding units were arranged along the entire front margin or at the front edge corners, while in the rear edge feeder the sheet separating units were situated at the rear of the pile.

With the alleged defects of front edge feeders we are not concerned, because rear edge feeders were well known, and in addition commercially utilized, prior to Harris, and it is the rear edge feeder to which the Harris patent is addressed; but, under elementary principles, reference may be made to any developments of the prior art. Upon resorting to the prior art, it is found that all of the units referred to in claim 6 and more specifically mentioned in the other claims were old. This fact is not in dispute, and its significance was appreciated by the District Judge in his careful and thorough opinion; for, recognizing that the buckler, presser foot, and the rest were old, he stated the point of the case when he said, "The sequence of the operation is everything." It is because we are satisfied that the sequence in defendant's machine is genuinely and not colorably different from that of the patent that we are unable to agree with the decision below in respect of infringement.

The patent in suit is for a sheet-feeding machine which is designed to pick up a sheet from the top of a pile and feed it into the printing press. The first operation of sheet-feeding machines is to raise some part of the top sheet from the pile and then "wind" it; i. e., separate it from the underlying sheet by a film of air. This initial raising of a part of the sheet is accomplished by "'buckling." The general method of buckling may be thus described:

A finger or buckle stop is pressed against the top of the pile, and a portion of the sheet near this presser is then engaged frictionally by a rotating roller or a finger, which moves toward the buckle stop. This engagement is produced by pressure between the roller or the finger (as the case may be) and the pile, and moves the part of the sheet beneath it toward the buckle stop. By reason of the presence of the buckle stop, the sheet as a whole does not move; hence the intervening part is arched up to produce the so-called buckle. In forming the buckle, a part of the sheet below is exposed, both beneath the arch itself and also between the edge of the top sheet and the outer edge of the pile. Both of these spaces have been availed of to insert a pile clamp or presser foot, which presses down on the subjacent sheet and the remaining part of the pile, so that, when the buckling mechanisms (i. e., the buckler and the buckle stop) are removed from the top sheet, the latter is free to be removed from the pile. Such a clamp acts to hold the subjacent sheet against any drag from the top sheet as the latter is being slid off the pile, and particularly holds it against push fingers used in such removal. Before such removal, however, an air blast is usually blown beneath the arched portion to "wind" the sheet and to provide the air film to complete the separation of the top sheet.

Prior to Harris, each one of these parts had been varied greatly in construction and location. Harris worked out a new cycle of operation,

the outstanding features of which were: (1) A separator designed to be lowered in contact with the buckled portion of the stock while the buckling and holding means are in contact therewith; and (2) the disengagement of the buckling means from the stock before the suction separator or holding means is raised, to allow any buckled portion of the stock other than the topmost sheet to resume its previous position on the pile. The result, in a patent sense, of what Harris did, was not new, because he took up the sheet and fed it to the press; but he did this in a new way and obtained a new practical result, namely, increased speed.

It is principally because of the features noted supra, working in a new way in combination with the other elements, that what Harris did rose to the dignity of invention, and the new practical result he attained by increasing the ability of such machines for rapid printing was a patentable contribution to the art. Such a result is a worthy achievement, particularly in a crowded art, and we have no hesitation in holding that the respective cycles of operation in plaintiff's patent and defendant's the patent is valid, and so much is conceded by defendant. But, when machines are contrasted, the difference in these cycles of operation will be at once appreciated:

Downward Movement.

| Harris. | Hall. |
|---|---|
| 1. Presser foot. | 1. Presser foot. |
| 2. Buckler. | 2. Sucker. |
| 3. Sucker. | 2. Buckler. |

Upward Movement.

| Harris. | Hall. |
|---|---|
| 1. Buckler. | 1. Presser foot. |
| 2. Sucker. | 2. Buckler. |
| 3. Presser foot. | 2. Sucker. |

Owing to the gearing of the Hall machine, we are satisfied that the buckler and the sucker move simultaneously, although mere visual observation might indicate that the buckler in the upward movement moved slightly ahead of the sucker, and that there was a slight difference in the downward movement. Whether they move simultaneously or not, however, is not important for the purposes of the question here considered.

It is entirely plain that the cycle or sequence of operation in one machine differs from that in the other. What Harris did, inter alia, and what Hall did not do, was to arrange his separators to engage the buckled portion of the stock and crowd it laterally to increase the separation at the crest of the buckled portion. See claim 11. It is this difference which explains the difference in practical results. The Hall machines can accomplish no greater result than was attainable before Harris.

Before 1908, and thus in the prior art, the Dexter, the Fuller, and the Cross, automatic paper-feeding machines were in commercial use. These feeders fed at least 2,500 sheets an hour. It was testified that the Harris feeder would feed the largest size sheets (i. e., 44 in. x 64 in.) at 3,500 per hour, and smaller sizes up to 6,000 per hour, while the

Hall machine can feed only 2,400 to 2,600 of the largest size per hour. In other words, the Harris feeder can feed about 1,000 sheets per hour more than the Hall feeder, and thus can meet the business' requirements of those engaged in large production, while Hall cannot.

The truth is that there is no real competition from the patent standpoint. Before the Harris invention, the Dexter could feed 2,500 an hour in round numbers, and now the Hall can do no better. Hence the field above 2,500, which Harris has rightly captured, remains uninvaded so far as Hall is concerned.

We fail to find any convincing evidence that the Dexter, Cross, or Fuller machines worked so as to smear or worked inaccurately, and many of the prior patents taught the art how to do the feeding accurately and without smearing. The real objective was greater speed, and the sequence of the Hall operation shows a cycle of operation different in principle from Harris, and that is why Hall is inferior in respect of speed.

The case is quite different from those where some slight or shrewd change is made, so that the operative result is not as good nor efficient as the result of the practiced invention. A disingenuous effort of that kind is sometimes characterized as an impairment of function; but here, where the difference in operation is real, the result is because of that difference, and not because of an appropriation of plaintiff's inventive thought, as defined in the claims.

A long list of patents has been cited to us to show the mechanical ancestry of defendant's feeder. We think that it is unnecessary to set forth an analysis of these, but we mention Kneeland, No. 326,124, Sedgwick, No. 469,366, and Dexter, No. 754,204, as worthy of consideration.

Finally, we think the case is not one where commercial utility is of service. We have found the patent valid, and we have indicated that defendant's feeder is not in the true sense a competitive article for the highest speed work; but, if commercial utility were of consequence, on this evidence, it is not a safe guide.

Plaintiff's feeder is attached to certain of its printing presses, which sell for a considerable price. Manifestly, the Harris press is a superior machine, and how much of commercial success is due to the merit of the press, with or without the feeder, we are unable to determine.

In concluding, we desire to reiterate that we think the invention meritorious, and that we go no further than to dispose of this case on the substantial question of sequence of operation. For that reason we make no comment as to the "rotary combing buckler," referred to in some of the claims.

The decree is reversed, with costs, solely on the ground of noninfringement, and the District Court is instructed to dismiss the bill, with costs, on that ground.